UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

UNITED STATES OF AMERICA

v.

EDWIN BELL LAY, III

CASE NO. 3:24-cr- 210- BJD-MCR

18 U.S.C. § 1349
18 U.S.C. § 1343

## INFORMATION

The United States Attorney charges:

## COUNT ONE
### (Wire Fraud Conspiracy)

### A. Introduction

At times material to this Indictment:

1.     Defendant EDWIN BELL LAY, III was a resident of the State of Florida and lived in the Middle District of Florida.

2.     Individual-1 was a resident of the State of Florida and lived in the Middle District of Florida.

3.     Individual-2 was a resident of the State of Florida and lived in the Middle District of Florida. Individual-2 was a lawyer, but disbarred by the Florida Bar in October 2019.

4.     LAY, Indiviudual-1, Individual-2, and others were involved in illegitimate debt settlement and mortgage loan modification businesses that opened

and closed under various names, oftentimes involving the same principals and personnel, during the duration of the fraudulent scheme.

5.      The Surety Law Group, LLC was a District of Columbia limited liability company with a registered business address in Washington, D.C. Surety Law Group marketed itself as offering legitimate debt settlement and load modification services to clients. Surety Law Group was in operation from in or about mid 2012 through in or about early 2015.

6.      The Redstone Law Group, LLC was a District of Columbia limited liability company with a registered business address in Washington, D.C. Redstone Law Group marketed itself as offering debt settlement and loan modification services to clients. Redstone Law Group was in operation from late 2012 through early 2015.

7.      Individual-1 and Individual-2 were principals of both Surety Law Group and Redstone Law Group.

8.      In a Federal Trade Commission (FTC) civil lawsuit in the Middle District of Florida (Case No. 3:14-cv-786-MMH), the United States District Court entered a stipulated order for permanent injunction against Individual-1, Surety Law Group, and Redstone Law Group, in which each was permanently enjoined from advertising, marketing, promotion, offering for sale, or selling, or assisting others in the same, of any secured or unsecured debt relief product or service. This included permanent prohibitions against misrepresentations relating to financial products and services, and an $8 million judgment jointly and severally as equitable monetary relief.

9.     Ameritrust Law Group, LLC was a District of Columbia limited liability company and registered in Florida as a foreign limited liability company, with a registered business address in Washington, D.C., that operated in the Middle District of Florida. Individual-1 was not the listed principal of Ameritrust on corporate records, but ran the company out of Jacksonville, Florida. When the FTC litigation shut down Surety Law Group and Redstone Law Group, Ameritrust remained and staff from those closed entities then transitioned to Ameritrust. Ameritrust was in operation from early 2014 to late 2016. LAY was an employee of Ameritrust as a loss mitigation manager. The FTC ultimately froze Ameritrust bank accounts.

10.     Pamela Randle & Associates, LLC, was a Florida corporation with a business address in Live Oak, Florida, that operated in the Middle District of Florida. In April 2015, Pamela Randle & Associates was incorporated as a subsidiary of Ameritrust, a structure which was dissolved the following month. Because of the FTC lawsuit and permanent injunction against Individual-1, Surety Law Group, Redstone Law Group, Individual-1 remained in the background of Pamela Randle & Associates, which operated as a debt settlement business utilizing untrained paralegals and a novice lawyer. Pamela Randle & Associates was in operation for the benefit of Individual-1 from late 2014 to late 2018.

11.     Volks Anwalt of New York, LLC (Volks Anwalt) was registered as a New York corporation on May 13, 2015. The following day, Volks Anwalt of Florida, LLC was incorporated in Florida as a subsidiary of Volks Anwalt of New

York. Volks Anwalt of Florida listed a principal place of business at the home address in Jacksonville Beach of a novice lawyer. When Individual-1 closed Ameritrust because the FTC froze its bank accounts, Individual-1 became a silent partner in Volks Anwalt, which was marketed as a bankruptcy law firm, and used the novice lawyer, who previously performed work at Ameritrust, as the principal lawyer at Volks Anwalt. This lawyer had little legal training and ultimately had his/her Florida license revoked by the Florida Bar in August 2019. LAY and others assisted in running the daily operations of Volks Anwalt, which was in existence from mid-2015 through late 2017. Individual-1 received monthly payments from the fraudulent foreclosure work performed at Volks Anwalt.

12.     Titan Legal Processing, LLC was a limited liability company incorporated in Illinois, but performed fraudulent debt settlement business in the Middle District of Florida. In early 2018, LAY assumed the role of Titan Legal Processing's registered owner and was signatory to Titan Legal Processing's bank accounts. LAY operated Titan Legal Processing at the direction of Individual-1, who derived a monetary benefit from Titan Legal Processing's fraudulent debt settlement business. In March 2018, Titan Legal Processing entered into a fraudulent marketing agreement with Titan Consulting Group, LLC, wherein Titan Consulting Group, LLC continued to promote Titan Legal Processing's fraudulent debt settlement business.

13.     Titan Consulting Group, LLC was a limited liability company incorporated in Delaware in April 2014, with primary operations in New York.

Titan Consulting Group marketed Titan Legal Processing's fraudulent debt settlement business in exchange for a percentage of Titan Legal Processing's intake of funds from clients, including in the Middle District of Florida.

### B.    The Conspiracy

14.    Beginning on an unknown date, but at least from as early as in or about mid-2015, continuing through at least in or around early 2021, in the Middle District of Florida and elsewhere, the defendant,

EDWIN BELL LAY, III,

did knowingly and willfully combine, conspire, confederate, and agree with others, both known and unknown, to commit wire fraud, in violation of 18 U.S.C. § 1343.

### C.    Manner and Means of the Conspiracy

15.    The manner and means by which the defendant and others sought to accomplish the object of the conspiracy included, among others, the following:

a.    It was part of the conspiracy that the conspirators would and did agree to and did devise a scheme to defraud individual victims of money through a series of debt settlement and mortgage loan modification businesses.

b.    It was further part of the conspiracy that after the FTC lawsuit (Case No. 3:14-cv-786-MMH) in the Middle District of Florida (Jacksonville Division) involving Individual-1, Individual-2, Surety Law Group, Redstone Law Group, and other entities, Individual-1 and Individual-2 continued in the debt

settlement and mortgage loan modification business. Individual-1 did so in violation of a stipulated permanent injunction.

      c.     It was further part of the conspiracy that as Individual-1 continued in the debt settlement and mortgage loan modification businesses through various businesses that opened and closed, other individuals, including LAY, became named principals in the businesses and continued those businesses for their benefit, and the benefit of Individual-1 and Individual-2.

      d.     It was further part of the conspiracy that Titan Legal Processing, via LAY and Individual-1 working together, entered into a fraudulent marketing agreement with Titan Consulting Group wherein Titan Consulting Group agreed to continue to promote Titan Legal Processing's fraudulent debt settlement services via mass mailings and on the internet.

      e.     It was further part of the conspiracy that the conspirators involved in the scheme worked together to market debt settlement services through false and misleading representations. In the case of Titan Legal Processing, those false and fraudulent marketing methods included: (1) mass mailings with flyers and advertisements with an example credit card with an average loan amount for which consumers had allegedly been pre-approved, a substantially lower new customer rate, and an average monthly savings; (2) email communications with existing Titan Legal Processing clients claiming Titan Legal Processing was a full service financial firm, when it was not; and (3) via Titan Consulting Group's website with links that promised monthly savings when clients signed up with Titan Legal Processing.

      f.     It was further part of the conspiracy that the conspirators would and did target potential clients with a specific FICO score to convince them to consolidate unsecured debt with Titan Legal Processing and other relevant businesses.

      g.     It was further part of the conspiracy that conspirators would and did attract and sign clients to contracts based on false and fraudulent marketing, then Titan Legal Processing and Titan Consulting Group representatives were trained to and did instruct the clients to stop paying their creditors, and make fixed monthly payments to Titan Legal Processing.

      h.     It was further part of the conspiracy that the conspirators would and did inform Titan Legal Processing clients that all of their money paid to Titan Legal Processing went towards paying off their bills, which was false.

      i.     It was further part of the conspiracy that the conspirators would and did falsely and fraudulently inform clients that payments from clients to Titan Legal Processing would be segregated into escrow accounts or separate trust accounts they would have access to. These separate accounts were falsely and fraudulently marketed as "FDIC protected trust accounts." Titan Legal Processing ceased using escrow accounts, and there were no separate FDIC protected trust accounts for clients to view the accumulation of payments.

      j.     It was further part of the conspiracy that the conspirators would and did take the clients' debt settlement payments to Titan Legal Processing and divert those payments, primarily for their personal use.

k.      It was further part of the conspiracy that the conspirators would and did take a percentage of client payments, based upon marketing from Titan Consulting Group, made to Titan Legal Processing, then Titan Legal Processing paid Titan Consulting Group a fixed percentage for those marketing services, which were based on false and fraudulent representations about Titan Legal Processing's debt consolidation practices. These payments from Titan Legal Processing to Titan Consulting Group were made via interstate wire transfers.

l.      It was further part of the conspiracy that the conspirators would and did engage in multiple meetings, perform acts, and make statements to promote and achieve the object of the conspiracy and to misrepresent, hide, and conceal, and cause to be misrepresented, hidden, and concealed, the purpose of the conspiracy and the acts committed in furtherance thereof.

All in violation of 18 U.S.C. § 1349.

## FORFEITURE

1.      The allegations contained in Count One of this Information are incorporated by reference for the purpose of alleging forfeitures pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c).

2.      Upon conviction of a conspiracy of the violation of 18 U.S.C. § 1343, in violation of 18 U.S.C. § 1349, the defendant shall forfeit to the United States, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to the offense.

3. The property to be forfeited includes, but is not limited to, to the following:

    a. An order of forfeiture in the amount of between $2.5 million and $3.5 million, which represents the proceeds the defendant obtained from the offense;

    b. Approximately $108,432.90 seized from bank account located at Bank of America, Account No. x6203, held in the name of Titan Legal Processing, LLC;

    c. Approximately $1,906.60 seized from bank account located at Bank of America, Account No. x9733, held in the name of Edwin B. Lay III;

    d. A Bank of America cashier's check in the amount of approximately $7,942.72, made payable to Titan Legal Processing, LLC;

    e. A 2015 GMC Yukon XL 1500 Denali, VIN: 1GKS1JKJ3FR630671, registered to Edwin Bell Lay, III; and

    f. A 2017 Cadillac Escalade, VIN: 1GYS4BKJ9HR232130, registered to Edwin Bell Lay, III.

4. If any of the property described above, as a result of any act or omission of the defendant:

    a. cannot be located upon the exercise of due diligence;

    b. has been transferred or sold to, or deposited with, a third party;

    c. has been placed beyond the jurisdiction of the court;

    d. has been substantially diminished in value; or

    e. has been commingled with other property which cannot be divided without difficulty;

the United States of America shall be entitled to forfeiture of substitute property

under the provisions of 21 U.S.C. § 853(p), as incorporated by 28 U.S.C. § 2461(c).


ROGER B. HANDBERG
United States Attorney

By: _____
A. TYSEN DUVA
Assistant United States Attorney

JOHN CANNIZZARO
Assistant United States Attorney

By: _____
MICHAEL J. COOLICAN
Assistant United States Attorney
Deputy Chief, Jacksonville Division