UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

FILED IN OPEN COURT
JACKSONVILLE, FLORIDA

10.15-2024

U.S. DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA

UNITED STATES OF AMERICA

v.

CASE NO. 3:24-cr-210 - BJD - MCR

EDWIN BELL LAY, III

### PLEA AGREEMENT

Pursuant to Fed. R. Crim. P. 11(c), the United States of America, by Roger B. Handberg, United States Attorney for the Middle District of Florida, and the defendant, EDWIN BELL LAY, III, and the attorney for the defendant, Sabra Barnett, Assistant Federal Public Defender, mutually agree as follows:

A. **Particularized Terms**

1. Count(s) Pleading To

The defendant shall enter a plea of guilty to Count One of the Information. Count One charges the defendant with Conspiracy to Commit Wire Fraud, in violation of 18 U.S.C. § 1349.

2. Maximum Penalties

Count One carries a maximum sentence of 20 years of imprisonment, a fine of $250,000 or the greater of twice the gross gain or twice the gross loss, a term of supervised release of not more than 3 years, and a special assessment of $100. A violation of the terms and conditions of supervised release is punishable by a maximum sentence of not more than 2 years of imprisonment as well as the

Defendant's Initials _EL_

AF Approval _ATD for JH_

possibility of an additional term of supervised release. With respect to certain offenses, the Court shall order the defendant to make restitution to any victim of the offense, as set forth below.

3. Elements of the Offense(s)

The defendant acknowledges understanding the nature and elements of the offense with which defendant has been charged and to which defendant is pleading guilty. The elements of Count One are:

First: Two or more persons, in some way or manner, agreed to try to accomplish a common and unlawful plan to commit wire fraud, in violation of 18 U.S.C. § 1343; and

Second: The Defendant knew the unlawful purpose of the plan and willfully joined in it.

4. Indictment Waiver

The defendant will waive the right to be charged by way of indictment before a federal grand jury.

5. No Further Charges

If the Court accepts this plea agreement, the United States Attorney's Office for the Middle District of Florida agrees not to charge the defendant with committing any other federal criminal offenses known to the United States at the time of the execution of this agreement.

Defendant's Initials ___   2

6. Chapter Two Base Offense Level Stipulation

Pursuant to Fed. R. Crim. P. 11(c)(1)(B), the United States and the defendant agree to jointly recommend to the Court that the defendant's Chapter Two base offense level be calculated at 7 pursuant to USSG§ 2B1.1(a)(1).

The parties understand that such a joint recommendation is not binding on the Court, and if not accepted by this Court, neither the United States nor the defendant will be allowed to withdraw from the plea agreement, and the defendant will not be allowed to withdraw from the plea of guilty.

7. Chapter Two and Three Calculations – Certain Stipulations

Pursuant to Fed. R. Crim. P. 11(c)(1)(B), the United States and the defendant agree to jointly recommend to the Court that the defendant's Chapter Two and Three guidelines scoring is as follows:

Loss - 2B1.1(b)(1)(K):                         + 20 level increase

Victims and Mass Marketing - 2B1.1(b)(2)(A):  +  2 level increase

Acceptance of Responsibility - 3E1.1:   - 3 level decrease

Total Offense Level (TOL):            26

The parties understand that the loss estimate is not binding on the Court, and if the Court calculates the loss differently, neither the United States nor the defendant will be allowed to withdraw from the plea agreement, and the defendant will not be allowed to withdraw from the plea of guilty. The parties reserve the right to argue for the application of certain Chapter Three and Four guidelines provisions at sentencing.

Defendant's Initials _____            3

8. Acceptance of Responsibility - Three Levels

At the time of sentencing, and in the event that no adverse information is received suggesting such a recommendation to be unwarranted, the United States will recommend to the Court that the defendant receive a two-level downward adjustment for acceptance of responsibility, pursuant to USSG § 3E1.1(a). The defendant understands that this recommendation or request is not binding on the Court, and if not accepted by the Court, the defendant will not be allowed to withdraw from the plea.

Further, at the time of sentencing, if the defendant's offense level prior to operation of subsection (a) is level 16 or greater, and if the defendant complies with the provisions of USSG § 3E1.1(b) and all terms of this Plea Agreement, including but not limited to, the timely submission of the financial affidavit referenced in Paragraph B.4., the United States agrees to file a motion pursuant to USSG § 3E1.1(b) for a downward adjustment of one additional level. The defendant understands that the determination as to whether the defendant has qualified for a downward adjustment of a third level for acceptance of responsibility rests solely with the United States, and the defendant agrees that the defendant cannot and will not challenge that determination, whether by appeal, collateral attack, or otherwise.

9. Cooperation - Substantial Assistance to be Considered

The defendant agrees to cooperate fully with the United States in the investigation and prosecution of other persons, and to testify, subject to a prosecution for perjury or making a false statement, fully and truthfully before any federal court

Defendant's Initials _____                    4

proceeding or federal grand jury in connection with the charges in this case and other matters, such cooperation to further include a full and complete disclosure of all relevant information, including production of any and all books, papers, documents, and other objects in defendant's possession or control, and to be reasonably available for interviews which the United States may require. If the cooperation is completed prior to sentencing, the government agrees to consider whether such cooperation qualifies as "substantial assistance" in accordance with the policies of the United States, warranting the filing of a motion at the time of sentencing recommending (1) a downward departure from the applicable guideline range pursuant to USSG § 5K1.1, or (2) the imposition of a sentence below a statutory minimum, if any, pursuant to 18 U.S.C. § 3553(e), or (3) both. If the cooperation is completed subsequent to sentencing, the government agrees to consider whether such cooperation qualifies as "substantial assistance" in accordance with the policies of the United States, warranting the filing of a motion for a reduction of sentence within one year of the imposition of sentence pursuant to Fed. R. Crim. P. 35(b). In any case, the defendant understands that the determination as to whether "substantial assistance" has been provided or what type of motion related thereto will be filed, if any, rests solely with the United States, and the defendant agrees that defendant cannot and will not challenge that determination, whether by appeal, collateral attack, or otherwise.

Defendant's Initials _____          5

10. Use of Information - Section 1B1.8

Pursuant to USSG § 1B1.8(a), the United States agrees that no self-incriminating information which the defendant may provide during the course of the defendant's cooperation and pursuant to this agreement shall be used in determining the applicable sentencing guideline range, subject to the restrictions and limitations set forth in USSG § 1B1.8(b).

11. Cooperation - Responsibilities of Parties

a.     The government will make known to the Court and other relevant authorities the nature and extent of the defendant's cooperation and any other mitigating circumstances indicative of the defendant's rehabilitative intent by assuming the fundamental civic duty of reporting crime. However, the defendant understands that the government can make no representation that the Court will impose a lesser sentence solely on account of, or in consideration of, such cooperation.

b.     It is understood that should the defendant knowingly provide incomplete or untruthful testimony, statements, or information pursuant to this agreement, or should the defendant falsely implicate or incriminate any person, or should the defendant fail to voluntarily and unreservedly disclose and provide full, complete, truthful, and honest knowledge, information, and cooperation regarding any of the matters noted herein, the following conditions shall apply:

Defendant's Initials _____     6

(1)     The defendant may be prosecuted for any perjury or false declarations, if any, committed while testifying pursuant to this agreement, or for obstruction of justice.

(2)     The United States may prosecute the defendant for the charges which are to be dismissed pursuant to this agreement, if any, and may either seek reinstatement of or refile such charges and prosecute the defendant thereon in the event such charges have been dismissed pursuant to this agreement. With regard to such charges, if any, which have been dismissed, the defendant, being fully aware of the nature of all such charges now pending in the instant case, and being further aware of defendant's rights, as to all felony charges pending in such cases (those offenses punishable by imprisonment for a term of over one year), to not be held to answer to said felony charges unless on a presentment or indictment of a grand jury, and further being aware that all such felony charges in the instant case have heretofore properly been returned by the indictment of a grand jury, does hereby agree to reinstatement of such charges by rescission of any order dismissing them or, alternatively, does hereby waive, in open court, prosecution by indictment and consents that the United States may proceed by information instead of by indictment with regard to any felony charges which may be dismissed in the instant case, pursuant to this plea agreement, and the defendant further agrees to waive the statute of limitations and any speedy trial claims on such charges.

(3)     The United States may prosecute the defendant for any offenses set forth herein, if any, the prosecution of which in accordance with this agreement,

Defendant's Initials _____               7

the United States agrees to forego, and the defendant agrees to waive the statute of
limitations and any speedy trial claims as to any such offenses.

(4) The government may use against the defendant the defendant's
own admissions and statements and the information and books, papers, documents,
and objects that the defendant has furnished in the course of the defendant's
cooperation with the government.

(5) The defendant will not be permitted to withdraw the guilty pleas
to those counts to which the defendant hereby agrees to plead in the instant case but,
in that event, the defendant will be entitled to the sentencing limitations, if any, set
forth in this plea agreement, with regard to those counts to which the defendant has
pled; or in the alternative, at the option of the United States, the United States may
move the Court to declare this entire plea agreement null and void.

12. Forfeiture of Assets

The defendant agrees to forfeit to the United States immediately and
voluntarily any and all assets and property, or portions thereof, subject to forfeiture,
pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), whether in the
possession or control of the United States, the defendant, or defendant's nominees.
The assets to be forfeited specifically include, but are not limited to, the following:
the sum of between $2.5 and $3.5 million in proceeds the defendant admits he
received from Titan into bank accounts that he used for his personal benefit and the
benefit of others as the result of the commission of the wire fraud conspiracy to

Defendant's Initials _____          8

which the defendant is pleading guilty, as well as the following:

1.   Approximately $108,432.90 seized from bank account located at Bank of America, Account No. x6203, held in the name of Titan Legal Processing, LLC;

2.   Approximately $1,906.60 seized from bank account located at Bank of America, Account No. x9733, held in the name of Edwin B. Lay III;

3.   A Bank of America cashier's check in the amount of approximately $7,942.72, made payable to Titan Legal Processing, LLC;

4.   A 2015 GMC Yukon XL 1500 Denali, VIN: 1GKS1JKJ3FR630671, registered to Edwin Bell Lay, III; and

5.   A 2017 Cadillac Escalade, VIN: 1GYS4BKJ9HR232130, registered to Edwin Bell Lay, III,

which assets constitute, or are traceable to, proceeds obtained as a result of the offense to which the defendant is to plead guilty.

The net proceeds from the forfeiture and sale of these specific assets will be credited to and reduce the amount the United States shall be entitled to forfeit as substitute assets pursuant to 21 U.S.C. § 853(p).

The defendant acknowledges and agrees that (1) the defendant obtained the sum of between $2.5 million and $3.5 million as a result of the commission of the offense and (2) as a result of the acts and omissions of the defendant, the proceeds not recovered by the United States through the forfeiture of the directly traceable assets listed herein have been transferred to third parties and cannot be located by the United States upon the exercise of due diligence. Therefore, the defendant agrees that, pursuant to 21 U.S.C. § 853(p), the United States is entitled to forfeit any other

Defendant's Initials _____      9

property of the defendant (substitute assets), up to the amount of proceeds the defendant obtained, as the result of the offense of conviction and, further, the defendant consents to, and agrees not to oppose, any motion for substitute assets filed by the United States up to the amount of proceeds obtained from commission of the offense and consents to the entry of the forfeiture order into the Treasury Offset Program.

The defendant additionally agrees that since the criminal proceeds have been transferred to third parties and cannot be located by the United States upon the exercise of due diligence, the preliminary and final orders of forfeiture should authority the United States Attorney's Office to conduct discovery (including depositions, interrogatories, requests for production of documents, and the issuance of subpoenas), pursuant to Rule 32.2(b)(3) of the Federal Rules of Criminal Procedure, to help identify, locate, and forfeit substitute assets.

The defendant agrees that forfeiture of substitute assets as authorized herein shall not be deemed an alteration of the defendant's sentence and the United States shall not be limited to the forfeiture of the substitute assets, if any, specifically listed in this plea agreement.

The defendant agrees and consents to the forfeiture of these assets pursuant to any federal criminal, civil, judicial or administrative forfeiture action. The defendant also agrees to waive all constitutional, statutory and procedural challenges (including direct appeal, habeas corpus, or any other means) to any forfeiture carried out in accordance with this Plea Agreement on any grounds, including that the forfeiture

Defendant's Initials _____        10

described herein constitutes an excessive fine, was not properly noticed in the charging instrument, addressed by the Court at the time of the guilty plea, announced at sentencing, or incorporated into the judgment.

The defendant admits and agrees that the conduct described in the Factual Basis below provides a sufficient factual and statutory basis for the forfeiture of the property sought by the government. Pursuant to Rule 32.2(b)(4), the defendant agrees that the preliminary order of forfeiture will satisfy the notice requirement and will be final as to the defendant at the time it is entered. In the event the forfeiture is omitted from the judgment, the defendant agrees that the forfeiture order may be incorporated into the written judgment at any time pursuant to Rule 36.

The defendant agrees to take all steps necessary to identify and locate all property subject to forfeiture (including substitute assets) and to transfer custody of such property to the United States before the defendant's sentencing. To that end, the defendant agrees to make a full and complete disclosure of all assets over which defendant exercises control, including all assets held by nominees, to execute any documents requested by the United States to obtain from any other parties by lawful means any records of assets owned by the defendant, and to consent to the release of the defendant's tax returns for the previous five years. The defendant agrees to be interviewed by the government, prior to and after sentencing, regarding such assets and their connection to criminal conduct. The defendant agrees that Federal Rule of Criminal Procedure 11 and USSG § 1B1.8 will not protect from forfeiture assets disclosed by the defendant as part of the defendant's cooperation.

Defendant's Initials _____        11

The defendant agrees to take all steps necessary to assist the government in obtaining clear title to the forfeitable assets before the defendant's sentencing. In addition to providing full and complete information about forfeitable assets, these steps include, but are not limited to, the surrender of title, the signing of a consent decree of forfeiture, and signing of any other documents necessary to effectuate such transfers.

The defendant agrees that, in the event the Court determines that the defendant has breached this section of the Plea Agreement, the defendant may be found ineligible for a reduction in the Guidelines calculation for acceptance of responsibility and substantial assistance, and may be eligible for an obstruction of justice enhancement.

Forfeiture of the defendant's assets shall not be treated as satisfaction of any fine, restitution, cost of imprisonment, or any other penalty the Court may impose upon the defendant in addition to forfeiture.

The defendant agrees that the forfeiture provisions of this plea agreement are intended to, and will, survive the defendant, notwithstanding the abatement of any underlying criminal conviction after the execution of this agreement. The forfeitability of any particular property pursuant to this agreement shall be determined as if the defendant had survived, and that determination shall be binding upon defendant's heirs, successors and assigns until the agreed forfeiture, including the forfeiture of any substitute assets, is final.

Defendant's Initials _____       12

B. **Standard Terms and Conditions**

1. Restitution, Special Assessment and Fine

The defendant understands and agrees that the Court, in addition to or in lieu of any other penalty, underline shall order the defendant to make restitution to any victim of the offense(s), pursuant to 18 U.S.C. § 3663A, for all offenses described in 18 U.S.C. § 3663A(c)(1); and the Court may order the defendant to make restitution to any victim of the offense(s), pursuant to 18 U.S.C. § 3663, including restitution as to all counts charged, whether or not the defendant enters a plea of guilty to such counts, and whether or not such counts are dismissed pursuant to this agreement. The defendant specifically agrees that he is jointly and severally liable to make restitution to all victims of the offense.

The defendant agrees that he is also jointly and severally liable to make restitution to such additional victims as may be identified in the future upon a showing from the United States that such victim is entitled to restitution prior to sentencing.

The defendant agrees to make his best efforts to make restitution to the victims as expeditiously as possible. To that end, the defendant agrees to work with government counsel to liquidate assets so that, at or before sentencing, he can make a significant payment towards his restitution obligation. The defendant further understands that compliance with any restitution payment plan imposed by the Court in no way precludes the United States from simultaneously pursuing other statutory remedies for collecting restitution (18 U.S.C. § 3003(b)(2)), including, but

Defendant's Initials                    13

not limited to, garnishment and execution, pursuant to the Mandatory Victims Restitution Act, in order to ensure that the defendant's restitution obligation is satisfied.

On each count to which a plea of guilty is entered, the Court shall impose a special assessment pursuant to 18 U.S.C. § 3013. To ensure that this obligation is satisfied, the Defendant agrees to deliver a check or money order to the Clerk of the Court in the amount of $100, payable to "Clerk, U.S. District Court" within ten days of the change of plea hearing. The defendant understands that this agreement imposes no limitation as to fine.

2. Supervised Release

The defendant understands that the offense(s) to which the defendant is pleading provide(s) for imposition of a term of supervised release upon release from imprisonment, and that, if the defendant should violate the conditions of release, the defendant would be subject to a further term of imprisonment.

3. Immigration Consequences of Pleading Guilty

The defendant has been advised and understands that, upon conviction, a defendant who is not a United States citizen may be removed from the United States, denied citizenship, and denied admission to the United States in the future.

4. Sentencing Information

The United States reserves its right and obligation to report to the Court and the United States Probation Office all information concerning the background, character, and conduct of the defendant, to provide relevant factual information,

Defendant's Initials _____       14

including the totality of the defendant's criminal activities, if any, not limited to the count(s) to which the defendant pleads, to respond to comments made by the defendant or the defendant's counsel, and to correct any misstatements or inaccuracies. The United States further reserves its right to make any recommendations it deems appropriate regarding the disposition of this case, subject to any limitations set forth herein, if any.

   5.  <u>Financial Disclosures</u>

Pursuant to 18 U.S.C. § 3664(d)(3) and Fed. R. Crim. P. 32(d)(2)(A)(ii), the defendant agrees to complete and submit to the United States Attorney's Office within 30 days of execution of this agreement an affidavit reflecting the defendant's financial condition. The defendant promises that his/her financial statement and disclosures will be complete, accurate and truthful and will include all assets in which he/she has any interest or over which the defendant exercises control, directly or indirectly, including those held by a spouse, dependent, nominee or other third party. The defendant further agrees to execute any documents requested by the United States needed to obtain from any third parties any records of assets owned by the defendant, directly or through a nominee, and, by the execution of this Plea Agreement, consents to the release of the defendant's tax returns for the previous five years. The defendant similarly agrees and authorizes the United States Attorney's Office and the Fraud Section to provide to, and obtain from, the United States Probation Office, the financial affidavit, any of the defendant's federal, state, and local tax returns, bank records and any other financial information concerning the

Defendant's Initials _K_        15

defendant, for the purpose of making any recommendations to the Court and for collecting any assessments, fines, restitution, or forfeiture ordered by the Court.  The defendant expressly authorizes the United States Attorney's Office and the Fraud Section to obtain current credit reports in order to evaluate the defendant's ability to satisfy any financial obligation imposed by the Court.

6. Sentencing Recommendations

It is understood by the parties that the Court is neither a party to nor bound by this agreement. The Court may accept or reject the agreement, or defer a decision until it has had an opportunity to consider the presentence report prepared by the United States Probation Office. The defendant understands and acknowledges that, although the parties are permitted to make recommendations and present arguments to the Court, the sentence will be determined solely by the Court, with the assistance of the United States Probation Office.  Defendant further understands and acknowledges that any discussions between defendant or defendant's attorney and the attorney or other agents for the government regarding any recommendations by the government are not binding on the Court and that, should any recommendations be rejected, the defendant will not be permitted to withdraw the defendant's plea pursuant to this plea agreement. The government expressly reserves the right to support and defend any decision that the Court may make with regard to the defendant's sentence, whether or not such decision is consistent with the government's recommendations contained herein.

Defendant's Initials             16

7. <u>Defendant's Waiver of Right to Appeal the Sentence</u>

The defendant agrees that this Court has jurisdiction and authority to impose any sentence up to the statutory maximum and expressly waives the right to appeal the defendant's sentence on any ground, including the ground that the Court erred in determining the applicable guidelines range pursuant to the United States Sentencing Guidelines, except (a) the ground that the sentence exceeds the defendant's applicable guidelines range <u>as determined by the Court</u> pursuant to the United States Sentencing Guidelines; (b) the ground that the sentence exceeds the statutory maximum penalty; or (c) the ground that the sentence violates the Eighth Amendment to the Constitution; provided, however, that if the government exercises its right to appeal the sentence imposed, as authorized by 18 U.S.C. § 3742(b), then the defendant is released from the waiver and may appeal the sentence as authorized by 18 U.S.C. § 3742(a).

8. <u>Scope of Agreement</u>

It is further understood that this agreement is limited to the Office of the United States Attorney for the Middle District of Florida, and cannot bind other federal, state, or local prosecuting authorities, although the undersigned will bring the defendant's cooperation, if any, to the attention of other prosecuting officers or others, if requested.

9. <u>Filing of Agreement</u>

This agreement shall be presented to the Court in open court, and filed in this cause, at the time of the defendant's entry of a plea of guilty pursuant hereto.

Defendant's Initials                17

10. Voluntariness

The defendant acknowledges that the defendant is entering into this agreement and is pleading guilty freely and voluntarily without reliance upon any discussions between the attorney for the government and the defendant and the defendant's attorney and without promise of benefit of any kind (other than the concessions contained herein), and without threats, force, intimidation, or coercion of any kind. The defendant further acknowledges the defendant's understanding of the nature of the offense or offenses to which the defendant is pleading guilty and the elements thereof, including the penalties provided by law, and the defendant's complete satisfaction with the representation and advice received from the defendant's undersigned counsel (if any). The defendant also understands that the defendant has the right to plead not guilty or to persist in that plea if it has already been made, and that the defendant has the right to be tried by a jury with the assistance of counsel, the right to confront and cross-examine the witnesses against the defendant, the right against compulsory self-incrimination, and the right to compulsory process for the attendance of witnesses to testify in the defendant's defense; but, by pleading guilty, the defendant waives or gives up those rights and there will be no trial. The defendant further understands that if the defendant pleads guilty, the Court may ask the defendant questions about the offense or offenses to which the defendant pleaded, and if the defendant answers those questions under oath, on the record, and in the presence of counsel (if any), the defendant's answers may later be used against the defendant in a prosecution for perjury or false statement. The defendant also

Defendant's Initials _____                    18

understands that the defendant will be adjudicated guilty of the offenses to which the defendant has pleaded and, if any of such offenses are felonies, may thereby be deprived of certain rights, such as the right to vote, to hold public office, to serve on a jury, or to have possession of firearms.

11. Factual Basis

The defendant is pleading guilty because the defendant is in fact guilty.  The defendant certifies that the defendant does hereby admit that the facts set forth in the attached "Factual Basis," which is incorporated herein by reference, are true, and were this case to go to trial, the United States would be able to prove those specific facts and others beyond a reasonable doubt.

12. Entire Agreement

This plea agreement constitutes the entire agreement between the government and the defendant with respect to the aforementioned guilty plea and no other promises, agreements, or representations exist or have been made to the defendant or the defendant's attorney with regard to such guilty plea.

Defendant's Initials                 19

13. Certification

The defendant and the defendant's counsel certify that this plea agreement has been read in its entirety by (or has been read to) the defendant and that defendant fully understands its terms.

DATED this 20th day of September 2024.

_____
EDWIN B. LAY, III
Defendant

_____
SABRA BARNETT
Attorney for Defendant

ROGER B. HANDBERG
United States Attorney

_____
TYSEN DUVA
Assistant United States Attorney

JOHN CANNIZZARO
Assistant United States Attorney

_____
MICHAEL J. COOLICAN
Assistant United States Attorney
Deputy Chief, Jacksonville Division

Defendant's Initials _____     20

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

UNITED STATES OF AMERICA

v.                                    CASE NO. 3:24-cr-210 - BJD · MCR

EDWIN BELL LAY, III

## PERSONALIZATION OF ELEMENTS

1.     Between in or about 2015 and in or about early 2021 did you and at least one other person try to accomplish a common and unlawful plan to violate 18 U.S.C. § 1343, that is, to commit wire fraud as charged in the Information, that is to obtain money or property by means of false or fraudulent pretenses, representations, or promises?

2.     Did you know the unlawful plan's purpose and willfully join in it?

Defendant's Initials _____

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

UNITED STATES OF AMERICA

v.                                    CASE NO. 3:24-cr- 210 · BJD · MCR

EDWIN BELL LAY, III

### FACTUAL BASIS[1]

#### Overview

This is a debt settlement fraud. LAY, Individual-1, and others were involved

with and controlled various entities from at least 2014 through February 2021 that

opened and closed at different times to solicit consumers for debt settlement services

and mortgage loan adjustments with the same or similar marketing pitches. The

companies were under-funded, oftentimes did not use escrow accounts to hold

payments made by consumers for debt settlement services, and LAY, Individual-1,

and others essentially took the customers' money and provided little to no debt

settlement services. Over time, customers were transferred from one business to

another, and told their debts were being paid or settled for one central payment,

when in fact, that was not the case.

---

[1] The Factual Basis is prepared by the United States. The factual basis does not include all
pertinent or known facts concerning the charge and guilty plea, or all facts that the
defendant has knowledge of. The factual basis is merely a set of facts designed to set forth
sufficient information that the Court uses to determine if there is indeed a factual basis to
accept the defendant's guilty plea.

Defendant's Initials _____

These various companies (described in greater detail below) offered debt settlement and loan modification services to individuals located throughout the United States. Through mass marketing, these entities promised to consolidate or eliminate unsecured debt for an equal monthly payment calculated based on a consumer's debt load and/or modify mortgage loan agreements for individuals facing foreclosure on their homes. These companies often charged up front fees in advance of rendering the promised services, but oftentimes provided no debt settlement services.

These companies marketed themselves as having a nationwide presence when, in fact, most were operated solely in Florida with inexperienced personnel (including novice and untrained lawyers) performing limited services. Employees and staff were shared across multiple companies, many with no legal background who represented themselves as paralegals to the consumers. Substantial portions of funds received from consumers were not used to settle debts, but instead were diverted to LAY, Individual-1, and others to fund their lifestyles.

**The Federal Trade Commission Sanctions**

In December 2014, the Federal Trade Commission (FTC) filed a federal lawsuit for permanent injunction and other equitable relief against Individual-1, Individual-2, and various entities, including Lanier Law, LLC, Surety Law Group LLP, Redstone Law Group, LLC, and others, alleging violations of various laws, including the FTC Act, Telemarketing Act, Credit Card Act, Dodd-Frank Act, and other statutes. The lawsuit generally alleged law violations based on a common

Defendant's Initials _____          2

scheme spanning back to 2011 involving fraud with respect to mortgage assistance relief services, including loan document and transaction reviews, mortgage loan modification services, and foreclosure defense services. The lawsuit alleged that the defendants charged up front fees in the range of $1000 to $4000 or, in some instances, monthly fees.

The sales pitch was similar to that involved in this fraud scheme. It involved telemarketing calls, internet website advertisements, and letters mailed to consumers. These forms of marketing and the subsequent telephone calls with marketers involved pitches of promises to reduce the interest rate and the principal balance of the loan, which would reduce the monthly payment. This would also come with legal representation to fight the lenders. After providing the start up fee to these entities, consumers often never met with or spoke with a lawyer, were left to negotiate with lenders on their own, and received little to no service in return. Despite the representations in marketing materials, the consumers routinely suffered economic injury, including the payments to the entities involved, then foreclosure expenses.

In that lawsuit (Case No. 3:14-cv-786-MMH-PDB), among other orders, the Court entered a stipulated order for permanent injunction against Individual-1, Surety Law Group, and Redstone Law Group, in which they were permanently enjoined from advertising, marketing, promotion, offering for sale, or selling, or assisting others in the same, of any secured or unsecured debt relief product or service. This included permanent prohibitions against misrepresentations relating to

Defendant's Initials ___*K*___        3

financial products and services. This included an $8 million judgment jointly and severally as equitable monetary relief, as well as other relief in the same case.

### The Progression of Companies

Among other companies, the progression of these companies that Individual-1 was involved in included the following with referenced dates of operation: Surety Law Group (mid 2012 – April 2015), Redstone Law Group (late 2012 – April 2015), Ameritrust Law Group (early 2014 – late 2016), Pamela Randle & Associates (late 2014 – September 2018), Volks Anwalt (mid 2015 – September 2017), and Titan Legal Processing, LLC (late 2017 – February 2021). Before the FTC Stipulated Order and Permanent Injunction entered on August 12, 2016, Individual-1 became a silent partner (not listed on incorporation or other corporate documents), but who derived income from the operation of these like debt settlement and loan modification businesses.

Oftentimes, when one company closed, clients were moved to another company that engaged in the same fraudulent conduct. For example, in 2018, clients received emails from Pamela Randle & Associates to direct payments to Titan Legal Processing.

### Individual-1's Progression to a Silent Partner and Edwin LAY's Role

When Individual-1 closed Redstone Law Group and Surety Law Group, the debt settlement clients were solicited to transfer to Pamela Randle & Associates. When Individual-1 closed Ameritrust, Volks Anwalt was created to continue to

Defendant's Initials _____       4

solicit consumers for foreclosure defense and other loss mitigation services falsely disguised as bankruptcy protection. Individual-1 approached Edwin LAY and others about running the daily operations of Volks Anwalt. LAY agreed, and did so with others. Individual-1 informed LAY that Individual-1 expected to receive $7,500 per month from the operations of Volks Anwalt. A novice lawyer was hired to serve as the attorney for Volks Anwalt. The lawyer served in that role until getting disbarred due to actions in that role. Individual-1 received monthly payments derived from the fraudulent work (loan modifications described as bankruptcy work) that Volks Anwalt performed until it was shut down by the Florida Bar.

After Volks Anwalt was shut down, Individual-1, Edwin LAY, and others created other companies, including Titan Legal Processing, to offer the same or similar debt settlement services to financially distressed individuals looking to consolidate unsecured debt.

### Titan Legal Processing

In late 2017, Titan Legal Processing (Titan) began operations as an Illinois company. In February 2018, Edwin LAY assumed the role of Titan's registered owner. This occurred at the direction of Individual-1, and lasted until in or about February 2021. Before Titan, LAY worked with Individual-1 at multiple companies that Individual-1 controlled, including Ameritrust, Pamela Randle & Associates, and Volks Anwalt. At the direction of Individual-1, LAY opened, was signatory to, and managed Titan's bank accounts at JP Morgan Chase and Bank of America, which gave him access to funds from consumers that Titan received. In March 2018, Titan

Defendant's Initials _____        5

entered into a fraudulent marketing agreement with Titan Consulting Group (TCG), wherein TCG agreed to continue to promote Titan's fraudulent debt settlement business.

Among the ways that Titan's debt settlement services were marketed included: (1) mass mailings with flyers and advertisements with an example credit card with an average loan amount, a substantially lower new customer rate, and an average savings per month; (2) TCG email communications with clients claiming Titan was a full service financial firm (when it was not); and (3) TCG's website in a link titled "How Our Loan Process Works." This link promised monthly savings once clients signed up with Titan. TCG ultimately benefited by receiving approximately 17% of the total debt enrolled with Titan.

Titan primarily offered debt settlement services to financially distressed individuals with a specific range of FICO score (usually between 500 – 680) to attract them and convince them to seek assistance for settling their unsecured debt. Upon receiving a signed contract from a customer, Titan representatives (trained by LAY and others) told their customers to stop communicating with their creditors, stop making payments to their creditors, and make fixed monthly payments to Titan. Titan customers were also informed by email that "All of your money goes towards paying off your bills," which was false.

Titan falsely and fraudulently claimed that it offered legitimate debt relief services, would relieve some or all of clients' debt (debt reduction by at least 35%), and segregate payments from clients to Titan in escrow accounts or separate trust

Defendant's Initials _____        6

accounts they would have access to. These separate accounts were falsely and fraudulently marketed as "FDIC protected trust accounts." Titan no longer used any escrow accounts, and there were no separate FDIC protected trust accounts for clients to view the accumulation of payments. The consumer funds paid for services were simply deposited into Titan's operating bank accounts, which LAY controlled at the direction of Individual-1. Payments from clients deposited into Titan's bank accounts were diverted to LAY, Individual-1, and others, and used for general operating expenses.

More than 3,000 individuals paid advance fees to Titan for debt settlement services. Titan collected approximately $24.5 million from these individuals. Titan disbursed approximately $7.8 million to creditors on behalf of these individuals, or as refunds to customers who repeatedly complained. The rest of the money went to those running Titan, including LAY (who then diverted money to silent partner Individual-1), affiliate companies, and general and administrative expenses. Titan oftentimes kept low balances in its bank accounts, such that paying off clients' unsecured debt would have been impossible. When the FBI seized Titan's bank accounts, the available balances were only approximately $110,000. Edwin LAY handled directing Titan funds to Individual-1. Oftentimes, Individual-1 requested funds from LAY via text message, which caused LAY to withdraw money and deposit cash or otherwise provide it to Individual-1. LAY received between $2.5 million and $3.5 million from Titan into bank accounts that he used for his personal benefit and the benefit of others. LAY provided a portion of those funds to

Defendant's Initials _____       7

Individual-1. The financial benefit for LAY, Individual-1, and others from Titan

derived proceeds continued into February 2021.

### Examples of Wire Transfers During the Titan Portion of the Scheme

The following are examples of wire transfers that occurred during the

conspiracy, which were sent in furtherance of it:

- December 9, 2019 – Wire transfer of $82,007.61 from Titan JP Morgan
  account (Jacksonville, FL) to TCG Wells Fargo account (New York) as
  payment for consumers signed up through mass mailing solicitations for
  false and fraudulent debt settlement services.

- February 21, 2020 – Wire transfer of $81,828.23 from Titan Bank of
  America account (Jacksonville, FL) to TCG Wells Fargo account (New
  York) as payment for consumers signed up through mass mailing
  solicitations for false and fraudulent debt settlement services.

- Further, during the scheme in 2018 and 2019, LAY routinely (at the
  direction of Individual-1 via text message) withdrew cash from Titan's
  JP Morgan account and provided it to Individual-1. The amounts
  varied, but were routinely in the amount of $3,000.

- In March 2020, Titan funds in the amount of $24,833 were transferred
  through a series of transactions to purchase a 2016 McLaren for
  Individual-1. Similarly, in that same month, ACH wire transfers were
  made from Titan funds to make a $28,371 payment on Individual-1's
  American Express card.

The appropriate loss amount is between $9.5 and $25 million, which is

equivalent to an increase in the offense level of 20.

### Assets Traced to Proceeds of Wire Fraud

As part of the conspiracy, in execution of the scheme described above, LAY and

Individual-1 disbursed proceeds of wire fraud for the purchase of assets, and obtained funds

that were deposited into financial institutions. In execution of the scheme, LAY opened

Defendant's Initials _____                    8

two bank accounts to serve as operating accounts for Titan Legal Processing. These accounts were JP Morgan Chase (JPMC) ending 2883 and Bank of America (BOA) ending 6203. These accounts were funded with proceeds of wire fraud obtained during the execution of the scheme.

### $108,432.90 in Funds in Titan Legal Processing BOA ending 6203

On February 2, 2021, a Seizure Warrant to obtain funds in BOA account ending 6203 was served and executed on Bank of America to seize fraud proceeds generated during the scheme. As a result, check number ending 2677 in the amount of $108,432.90 and dated February 8, 2021, was received by the FBI. These funds are currently being maintained in a forfeiture bank account controlled by the U.S. Marshal Service. Tracing of these funds illustrated that they were proceeds obtained as a result of fraudulent representations made during the scheme.

### $1,906.90 in Funds in LAY's BOA Account ending 9733

On or about February 2, 2021, a Seizure Warrant to obtain funds in BOA 9733 was served and executed on Bank of America to seize fraud proceeds generated during the scheme and paid to LAY. As a result, check number ending 2676 in the amount of $1,906.90 and dated February 8, 2021, was received by the FBI. These funds are currently being maintained in a forfeiture bank account controlled by the U.S. Marshal Service. Tracing of these funds illustrated that they were proceeds obtained as a result of fraudulent representations made during the scheme.

Defendant's Initials _____                    9

### Cashier's Check No. 39473662 in the Amount of $7,942.72

On or about June 4, 2021, a Seizure Warrant to obtain funds contained in Titan Legal Processing's BOA account ending 6203 was served and executed on Bank of America. Upon the execution of the Seizure Warrant, Bank of America advised that the funds contained in BOA 6203 had been liquidated and a cashier's check was sent to Titan Legal Processing. These additional funds consisted of items previously negotiated being returned for insufficient funds. BOA 6203 was funded primarily with fraud proceeds as described above. Upon notification of service of the warrant, LAY, through his attorney, was advised that the FBI obtained a seizure warrant for the funds provided to him via this cashier's check. LAY voluntarily surrendered the cashier's check. This cashier's check represents a return of fraud proceeds.

### 2015 GMC Yukon XL 1500 Denali

On or about February 2, 2021, a Seizure Warrant was served and executed on the 2015 GMC Yukon Denali with VIN number 1GKS1JKJ3FR630671. This vehicle is currently being maintained by the U.S. Marshal Service. Tracing of the funds to purchase this vehicle illustrated that it was purchased with fraud proceeds, with $15,000 in cash originating from a withdrawal from Titan Legal Processing's JPMC 2883 account. LAY also made payments on the vehicle from his personal BOA account ending 9733, which was funded with fraud proceeds when LAY made these payments. Further, on June 29, 2020 (clearing date July 1, 2020), LAY sent an electronic payment from Titan Legal Processing's BOA account ending 6203 in the

Defendant's Initials _____        10

amount of $13,091.66 to pay off the loan. This payment was likewise funded with fraud proceeds.

### 2017 Cadillac Escalade

On or about June 4, 2021, a Seizure Warrant was served and executed on the 2017 Cadillac Escalade with VIN number 1GYS4BKJ9HR232130. This vehicle is currently being maintained by the U.S. Marshal Service. Tracing of the funds to purchase this vehicle illustrated that it was purchased with fraud proceeds. Specifically, on October 20, 2018, in a series of transactions, this purchase included a check from the Titan Legal Processing JPMC account ending 2883, which was funded with fraud proceeds.

